# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| HCA - INFORMATION TECHNOLOGY & SERVICES, INC. <br><br> Plaintiff, <br><br> v. <br><br> INFORMATICA CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. |

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND UNFAIR TRADE PRACTICES

Plaintiff HCA - Information Technology & Services, Inc. ("IT&S"), by and through its attorneys, alleges for its Complaint for Injunctive Relief, Declaratory Judgment and violation of the Tennessee Consumer Protection Act against defendant Informatica Corporation ("Informatica") as follows:

### NATURE OF THE ACTION

1.     This action is brought pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 et seq., for a declaration of the parties' rights and responsibilities under their Software License, Maintenance and Support Agreement General Terms and Conditions Applications Software Agreement, dated December 29, 1998 ("SLA"), to obtain injunctive relief prohibiting Informatica from interfering with IT&S' access to or use of the Informatica software ("Software") under the pretext of a breach of the SLA and recover damages for Informatica's unfair trade practices. Pursuant to the SLA, IT&S purchased a license to use the Software in 1998 and has continually made use of it since that time. In October 2010, Informatica for the

first time claimed that the infrastructure IT&S had adopted to implement its Informatica license

violated the terms of the SLA and demanded $6,300,000 in additional license and maintenance

fees. Informatica made this claim despite having previously known and approved of IT&S'

infrastructure. In addition, Informatica has stated that if IT&S does not pay the $6,300,000 by

December 31, 2010, it will terminate IT&S' right to use the Software.

<h2 style="text-align:center">PARTIES</h2>

2.      HCA - Information Technology & Services, Inc. ("IT&S") is a Tennessee

corporation that maintains its principal place of business at 2545 Park Plaza Nashville,

Tennessee 37203.

3.      Upon information and belief, Informatica Corporation ("Informatica") is a

Delaware Corporation that maintains its principal place of business at 100 Cardinal Way

Redwood City, California 94063.

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

the parties are citizens of different states and the amount in controversy is in excess of $75,000,

exclusive of interest and costs.

5.      This Court may properly exercise personal jurisdiction over Informatica because

it purposefully availed itself of the benefits and protections of the state of Tennessee by licensing

and maintaining the Software to a company that operates the Software within this judicial

district.

6.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or

omissions giving rise to IT&S' claims occurred in this judicial district. Specifically, IT&S is

located in this judicial district and operates the Software from its location.

## FACTS

### THE PARTIES' AGREEMENT

7.     Columbia Information Systems, Inc., IT&S' predecessor-in-interest, and Informatica are parties to the SLA.  A true and accurate copy of the SLA is attached as Exhibit A.

8.     The SLA sets out the general terms and conditions of the license IT&S purchased to use the Software.

9.     Section VIII.B of the SLA provides that "[n]o action, regardless of form, arising out of any acts or omissions relating to this Agreement may be brought by either party more than three years after the occurrence of such act or omission."

10.     Section XI.E of the SLA provides that the "validity, construction and performance of this Agreement . . . shall be governed by and construed in accordance with the laws of the State of Tennessee."

11.     Section XI.E of the SLA further provides in relevant part that "[i]n the event of litigation between the parties concerning this Agreement, the prevailing party shall be awarded reasonable attorney's fees and other costs and expenses incurred in connection with such action."

12.     Pursuant to the SLA, between 2003 and 2004 IT&S purchased, among other things, a license to use the Software.

13.     Informatica personnel oversaw and assisted with IT&S' installation of the Software after IT&S unsuccessfully tried to install it without assistance.

14.     In 2005, IT&S upgraded its license for the Software to its then current version 7.

15.     In September 2007, IT&S upgraded its license for the Software to its then current version 8.  In addition, IT&S purchased the right to utilize the Software on a grid basis instead of the former partitioning basis.

16.     IT&S' license to use version 8 and earlier versions of the Software includes the right to one "Central Repository" installed on a single host server which serves as a central point of connection for the PowerCenter Production CPUs.

17.     Consistent with its license rights, IT&S has since 2003 or 2004 installed the Software such that there is one Central Repository on a single host server which serves as a central point of connection for the PowerCenter Production CPUs.

18.     Informatica personnel provided guidance and suggested best practices to IT&S on installing the version 8 upgrade and conversion to grid-based computing.  IT&S followed all guidance given and best practices offered by Informatica.

## THE PARTIES' DISPUTE

19.     In October 2010, Informatica conducted an audit of IT&S' installation of the Software (the "Audit").

20.     On October 13, 2010, Informatica provided IT&S with the results of the Audit and claimed that IT&S' installation of the Software was not in compliance with the SLA.  A copy of Informatica's October 13, 2010 letter claiming non-compliance is attached as Exhibit B.

21.     Informatica's primary claim of noncompliance is based on IT&S' use of "repository services" for each of its lines of business within the Central Repository.  Informatica claims that IT&S' "repository services" each constitute a separate "repository" which requires its own license, despite not being installed on its own host server and not having its own central connection to a PowerCenter Production CPU.

22.     Informatica has demanded $6,300,000 in additional license and maintenance fees as a result of IT&S' alleged non-compliance with the SLA.

23.     IT&S denies that its separate "repository services" located within the one Central Repository, constitute separate "repositories." Instead, IT&S asserts that its "repository services" have a parent-child relationship with the Central Repository and therefore are not each separate "repositories." IT&S further asserts that its license entitles IT&S to an unlimited number of parent-child "repository services," so long as they are installed on a single host server that has a single central connection to a PowerCenter Production CPU, i.e., one parent.

24.     Some time between April - August, 2007, Informatica inspected IT&S' infrastructure and confirmed IT&S' interpretation of the SLA to allow multiple "repository services" within one Central Repository. IT&S has not materially changed its infrastructure from the one that Informatica inspected in 2007.

25.     Informatica also claims that IT&S has breached the SLA by utilizing an additional Source License for which it has not obtained a license. IT&S does not dispute this assertion and has offered to pay for the additional Source License upon receipt of an Informatica invoice for it. To date, Informatica has not sent IT&S an invoice for the additional Source License.

## COUNT I
## DECLARATORY JUDGMENT

26.     IT&S repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Complaint.

27.     IT&S has a reasonable apprehension of imminent litigation as a result of the discussions with, and correspondence from, Informatica.

28.     More specifically, Informatica has repeatedly alleged that IT&S is in violation of the SLA and has repeatedly demanded compensation for the breach(es). Informatica has referred

this matter to an outside lawyer, who threatened to terminate IT&S' license if IT&S did not meet Informatica's payment demands by December 31, 2010.

## COUNT II
### INJUNCTIVE RELIEF

29.    IT&S repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Complaint.

30.    Informatica has threatened to terminate IT&S' license to use the Software if Informatica's payment demands are not met by December 31, 2010.

31.    IT&S has been using the Software since 1998.  IT&S has come to rely on the Software to perform critical aspects of its business.

32.    IT&S will be profoundly and irreparably damaged if it is forced to cease using the Software.

33.    IT&S has a strong likelihood of succeeding on the merits of its claims against Informatica.

34.    The balance of the equities weighs in favor of entering the injunction requested by IT&S.

35.    The requested injunction is consistent with the public interest.

## COUNT III
### VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

36.    IT&S repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Complaint.

37.    By engaging in the conduct described above, Informatica has violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.  Informatica intentionally and knowingly engaged in unfair and deceptive acts in connection with its attempts to enforce its current interpretation of the SLA.

38.     Among other unfair and deceptive acts, Informatica was fully aware of the scope and extent of IT&S's uses of the Software under the SLA, including the repository services for each of its lines of business within the Central Repository. From 2005-2010, Informatica charged IT&S a license fee consistent with IT&S's usage of the Software. Following Informatica's October 2010 Audit, Informatica abruptly demanded $6,300,000 in additional license and maintenance fees, even though the Audit did not reveal any uses of the Software of which Informatica was not already aware.

39.     As a direct and proximate cause of Informatica's conduct, IT&S has been damaged and is entitled to all remedies and damages permitted under the Tennessee Consumer Protection Act, including treble damages and attorney's fees.

**WHEREFORE**, IT&S respectfully requests the following relief:

a.     A declaration that IT&S is not in violation of the SLA and has no obligation to compensate Informatica beyond its existing license payments;

b.     A Preliminary and Permanent Injunction against Informatica, enjoining Informatica from attempting to interfere with IT&S's use or preclude IT&S from using the Software for so long as IT&S makes the required license payments and enjoining Informatica from otherwise terminating IT&S's license for the Software;

c.     A Judgment against Informatica for compensatory damages, treble damages and attorney's fees arising from Informatica's violation of the TCPA; and

d.     All other relief to which IT&S is entitled.

John R. Jacobson
Katharine R. Cloud
Riley Warnock & Jacobson, PLC
1906 West End Ave.
Nashville, TN 37203
(615)320-3700
jjacobson@rwjplc.com
kcloud@rwjplc.com

Attorneys for HCA-INFORMATION &
TECHNOLOGY SERVICES


Of Counsel:

Jason C. Kravitz (*pro hac vice* admission to be requested)
Gregg A. Rubenstein (*pro hac vice* admission to be requested)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
Tel. (617) 345-1000
Fax (617) 345-1300


Dated: December 9, 2010